## ON APPEAL FROM THE COURT OF CHANCERY, AND THE PREROGATIVE COURT.

### MARCH TERM, 1913.

———————

HENRY O. ROGERS, appellant,

*v.*

HELEN A. ROGERS, respondent.

[Submitted July 8th, 1913.   Decided April 24th, 1913.]

1. Under our statute desertion is justified only when the deserting party has been so offended against as to authorize at his or her instance a decree of divorce or judicial separation, but the guilt of the offending party must appear by clear and satisfactory proof.

2. When a defendant in a divorce case pleads a counter matrimonial offence against the petitioner in bar of the suit, the offence so pleaded is not made out unless supported by corroborating evidence the same as though it were made the basis of an application for divorce.

3. While the support of his wife and children by the petitioner was meagre and possibly not all that he could and should have provided out of such means as he had, nevertheless the mere fact of failure to provide sufficient support for a wife does not constitute desertion by the husband under our statute.

4. When a wife deserts her husband it is his duty to make proper approaches to her and sincere efforts to induce her to return to him, unless it is apparent that such approaches and efforts would be entirely futile.

5. Evidence examined and *held* to show a willful, continued and obstinate desertion by a wife of her husband under such circumstances as excused him from making approaches to her and an effort to induce her to return to him, because it was apparent that any such inducement or effort would have been futile and unavailing.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Stevenson, whose opinion is reported *ante p. 311.*

On final hearing on pleadings and proofs.

*Mr. Archibald C. Hart,* for the appellant.

*Messrs. Hance & Miller,* for the respondent.

The opinion of the court was delivered by

WALKER, CHANCELLOR.

Mr. Rogers filed a petition for divorce in the court below alleging willful, continued and obstinate desertion by his wife for the statutory period of two years. She answered denying the desertion, and averred that she went to the home of her parents in New York City in the month of August, 1908, with their children, and that the petitioner refused to permit her to re-enter their home at Hasbrouck Heights, New Jersey, and barred the house against her; that she had at all times been anxious and willing to return to the petitioner and so informed him, provided he would cease from cruel and inhuman treatment toward her and cease from treating her as a servant and permit her to be mistress of the household and rear her children as the wife of the petitioner; to all of which requests the petitioner refused to accede; that after August, 1908 (the time of the separation), the petitioner refused to provide her with money for the support of herself and children and that she commenced a suit in chancery for such support, which resulted in his agreeing to pay her

the sum of $3 per week for the support of their two children, and that he has continued to pay such weekly sum.

· The cause was referred to Vice-Chancellor Stevenson, who advised a decree dismissing the husband's petition. In the course of his oral opinion he remarked:

"When a man sues his wife for divorce for desertion and charges her with willful, continued and obstinate desertion, he must prove that the desertion had those three characteristics. The burden is upon the husband, the petitioner. He must show by a preponderance of the evidence that his wife was guilty of obstinate desertion and, in my judgment, in this case the husband entirely fails. As I have already indicated, the great weight of the evidence in this case tends to show that there was no such obstinacy on the part of the wife—that if proper approaches had been made to her—if an honest, sincere effort had been made by the husband for a reconciliation. it would have been successful."

We are in accord with the proposition that a party to a suit for divorce who charges the other with willful, continued and obstinate desertion must prove that charge, and that the burden of proof is cast upon him or her who prefers it. This is axiomatic. It has been so often decided as not to need the citation of authorities to support it.

In this case the defendant left the petitioner and has remained away from him for more than the statutory period of two years. Was she justified? If not, was the husband obliged to make a proper effort to induce her to return? This, in turn, involves the question whether such inducement would have been futile, and was so understood by the husband.

First, the parties were living in a house owned by the petitioner at Hasbrouck Heights in this state, and on the morning of August 18th, 1908, the defendant went for a visit to her parents in New York City with their two children, the petitioner accompanying them. Before starting and on the way to New York they quarreled about money matters. They had had repeated disputes about money, and the petitioner was shown to have been a miserly and penurious man. His income was small, to be sure, and that was a reason for economy, but not for the penurious-

·ness in which he indulged and which amounted to considerable privation to his wife and children.

On cross-examination the defendant was asked what were her real reasons for deserting the petitioner, and she answered that it was because he refused to give her money that he should have given her to run the house with, and his general continued unkind treatment.   At an interview with her husband, at her father's house in New York, she agreed to return to him only upon condition that she should have $30 a month to run the house with, and that they were to occupy separate rooms.   She asserted that from the time she made those conditions to the time of giving her testimony her mind on that subject had not changed.   She only paid one visit to the Hasbrouck Heights house after she went to her father's in 1908, and that was not to live with her husband but to take her furniture and belongings away.   On the occasion of the petitioner being at the defendant's father's house her father told the petitioner that if his wife returned to him they would have to occupy separate rooms, and the defendant in her testimony said that that was the first that was said about separate rooms.

The defendant testified that her husband would not agree to the conditions, and that her father then asked her to state her decision, and she asked the petitioner if he had changed his idea as to how she should run the house and he said "No."   She then asked him if he would continue to carry the money for the running of the house and he said "Yes," and she asked if she was not to have any if she went back, and if he was to continue to buy the things and pay the bills, and he said "Yes," he thought he could do it more economically than she could, and she said she would not return under those conditions, and she added that if he changed and she went back still they would occupy separate rooms.

It should be stated that the defendant's refusal to occupy the same room with her husband was because she suspected him of having some sort of venereal disease, although she admits she did not accuse him of it while living with him.   It was only brought to his attention by her father at the interview just adverted to, according to the husband's testimony.   The defendant's father

testified that he himself said nothing to Rogers about his alleged physical condition; that the subject was not brought up at the conversation in his (witness') house, although his daughter had intimated to him such was the case. He did say that he exacted as a condition of his daughter's going back to her husband that they should occupy separate rooms, and gave as a reason that he understood Mr. Rogers was entirely too passionate a man for his wife under the circumstances—whatever they were. The date of the interview with the father was September 8th, 1908, the husband having paid one visit to his wife at her parents between the date of her leaving, August 18th, 1908, and that visit was on August 31st, 1908. On the 10th of September, 1908, it was that Mrs. Rogers went to her former home and removed her things in the absence of her husband. The petitioner continued to occupy his house from the time of their separation until the filing of his petition in this cause. His wife never returned to him and he never made any overtures to her for a reconciliation or endeavored to persuade her to return to him.

It must be conceded that Mrs. Rogers left her husband and has remained away from him. She does not deny it. In her answer she seeks to justify it by alleging that her husband had been guilty of cruel and inhuman treatment toward her; that he treated her as a servant, and did not permit her to be mistress of the household and rear her children as his wife; that after the separation he refused to provide her with money for the support of herself and children.

Under our statute desertion is justified when the deserting party has been so offended against as to authorize at his or her instance a decree for divorce or judicial separation, but the guilt of the offending party must appear by clear and satisfactory proof. *Drayton* v. *Drayton, 54 N. J. Eq. (9 Dick.) 298, 301; Suydam* v. *Suydam, 79 N. J. Eq. (9 Buch.) 144, 146.*

Assuming that the charge of cruelty in the defendant's answer is sufficiently pleaded and that the pleader intends to charge the extreme cruelty which is cause for divorce *a mensa et thora* under our statute, still it is not proved, that is the facts testified in support of the allegation do not in and of themselves consti-

tute extreme cruelty. But even if they did, being an affirmative defence, the burden of proving it would be upon the defendant, and, as it amounts to a matrimonial offence pleaded in bar of a suit for divorce, it would have to be supported by corroborating evidence, the same as though it were made the basis of an application for divorce. *Letts* v. *Letts, 79 N. J. Eq. (9 Buch.) 630, 632.* The same rule was applied in *Garcin* v. *Garcin, 62 N. J. Eq. (17 Dick.) 189.*

So far as the question of venereal disease is concerned, the wife only suspected it and did not accuse her husband of it, much less prove it. Therefore, no fact is presented which makes a case of extreme cruelty visited by the husband upon the wife through sexual intercourse while he was so afflicted, and the case does not fall within *Cook* v. *Cook, 32 N. J. Eq. (5 Stew.) 475, 479,* and *Crane* v. *Crane, 62 N. J. Eq. (17 Dick.) 21, 26.*

As to her father's assertion of the reason for the imposition of the condition under which she might return, namely, that they were to occupy separate rooms because the petitioner was entirely too passionate for his wife, it is sufficient to say that the court is not given to be informed of any facts which might show extreme cruelty arising out of gross abuse of marital rights. The court of chancery in *English* v. *English, 27 N. J. Eq. (12 C. E. Gr.) 71,* granted a decree of divorce from bed and board forever on the ground of extreme cruelty, consisting mainly in gross abuse by the husband of his marital rights, rendering it unsafe for the wife to cohabit with him, or be under his command or control, which decree, however, was reversed in this court (*Ibid. 579*), but only because it was apprehended that further acts of the same abuse would not be attempted if the wife should return to him (at *p. 585*), and the divorce was refused and the bill dismissed, but without prejudice, so that the facts urged in the complaint before the court might be used if the case should again be brought. But the case at bar does not come within this doctrine for want of proof of any gross abuse of marital rights such as would constitute extreme cruelty.

While the support of his wife and children by the petitioner was meagre and possibly not all that he could and should have provided out of such means as he had, nevertheless the mere fact.

of failure to provide sufficient support for a wife does not constitute desertion by the husband under our statute. See *Palmer* v. *Palmer, 22 N. J. Eq. (7 C. E. Gr.) 88; Skean* v. *Skean, 33 N. J. Eq. (6 Stew.) 148; Thomas* v. *Thomas, 74 Atl. Rep. 125, 127.*

The learned vice-chancellor in the court below lays considerable stress upon the want of proper approaches by the husband to the wife and the absence of sincere effort on his part to induce a reconciliation and her return. We, however, think that this cause falls within that class of adjudicated cases which excuse the husband from making an effort in the direction just mentioned, because it is apparent to us from the wife's conduct—her actual desertion of her husband, the imposition of unlawful and unreasonable conditions before she would return, her removing her furniture and belongings from his house in his absence, bringing a suit for alimony shortly after the separation—that any overtures or efforts made by her husband to induce her to return would have been entirely futile. See *Hall* v. *Hall, 65 N. J. Eq. (20 Dick.) 709; Sterling* v. *Sterling, 71 N. J. Eq. (1 Buch.) 59; Purnell* v. *Purnell, 70 Atl. Rep. 187.*

The above views lead to a reversal of the decree below and the granting of a final decree of divorce to the petitioner and appellant.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, BERGEN, VOORHEES, MINTURN, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE—13.