JOSIE G. CAVILEER, complainant-respondent,

*v.*

WALTER K. CAVILEER, defendant-appellant.

[Submitted July 10th, 1922. Decided November 20th, 1922.]

1. The conditions (other than adultery) which will justify a husband in separating himself from his wife, and refusing her support and maintenance, are those which our Divorce act (*Comp. Stat. p. 2021*) has provided as a sufficient cause for the court to grant to the husband a divorce from bed and board, namely, extreme cruelty upon the part of the wife. And when a husband separates himself from his wife, and she claims suitable support and maintenance under section 26 of the Divorce act, he must justify that separation by proof of extreme cruelty upon the part of his wife to the same extent as he would be compelled to prove if he were suing for a divorce from bed and board on the ground of extreme cruelty.

2. "Extreme cruelty," as used in our Divorce act (*Comp. Stat. p. 2021*), is such cruel conduct as endangers the safety of the person or the health of the aggrieved party, either actually inflicted or reasonably apprehended.

3. A single act of personal violence upon the part of a wife against her husband is not extreme cruelty justifying abandonment of, and refusal to support, the wife, where the injury was slight, and the act was committed under circumstances which do not furnish any reasonable apprehension that the continuance of cohabitation would be attended with further personal injury.

4. Physical injury inflicted upon the husband by the brother of his wife, not countenanced by her, is not extreme cruelty justifying the husband in separating from his wife and refusing her support and maintenance, especially where the circumstances do not show any reasonable apprehension that the continuance of cohabitation with the wife would result in further injury.

5. In a proceeding by the wife for support and maintenance under the statute, the court may look at the attitude and conduct of the husband towards the wife since the commencement of the suit, for the purpose of giving character to the act of the husband in separating himself from his wife.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Leaming.

*Messrs. Bourgeois & Coulomb,* for the appellant.

*Messrs. Cole & Cole,* for the respondent.

The opinion of the court was delivered by

TRENCHARD, J.

Josie G. Cavileer filed the bill in this case against her husband, Walter K. Cavileer, to obtain suitable support and maintenance under the statute.

The chancellor made a decree in her favor and the husband appealed.

We are of the opinion that the decree should not be disturbed.

Section 26 of our Divorce act (*Comp. Stat. p. 2038*) declares that

"In case a husband, without any justifiable cause, shall abandon his wife or separate himself from her, and refuse or neglect to maintain and provide for her, it shall be lawful for the court of chancery to decree and order such suitable support and maintenance, to be paid and provided by the said husband for the wife and her children, or any of them, by that marriage, or to be made out of his property, and for such time as the nature of the case and the circumstances of the parties render suitable and proper in the opinion of the court."

In the instant case it appeared that the husband separated himself from his wife and refused or neglected to maintain and provide for her; and the only question argued on this appeal is whether the husband's conduct, in that respect, was "without any justifiable cause."

The husband contends that his abandonment and refusal to support his wife was justified by an assault made upon him by her and her brother.

The statute in question was construed in *Taylor* v. *Taylor, 73 N. J. Eq. 745* (in this court), it being held that a wife, to justify her desertion of the husband, so as to bring her within the statute (adultery not being alleged), must prove such extreme cruelty on the part of the husband as would entitle her to a divorce from bed and board on the ground of extreme cruelty, were she suing therefor, and that a failure to so justify her desertion precluded recovery of separate maintenance under the statute. And, conversely, it was held in *Bradbury* v. *Bradbury (Court of Chancery), 74 Atl. Rep. 150,* that the conduct of the wife, which would render abandonment of her husband justifiable under the statute, must be such a matrimonial offence on her part as would entitle the husband to a divorce. In *White* v. *White, 87 N. J. Eq. 354* (in this court), it was said that "a justifiable cause, which will relieve the husband from his legal obligation to maintain and provide for his wife, is a cause which he has not helped to create," such as adultery of the wife, "free from legal guilt or connivance on his part." And in *Whittle* v. *Schlemm, 94 N. J. Law 112,* the chancellor, speaking for this court, remarked that "it may well be that the adultery of the wife is a good defence in a proceeding brought

under this section." But that question was not there involved and was not decided. There, the question was as to the right of a wife, while living separate from her husband, to secure funds provided for her support in a separation agreement, which right it was held persists even after the commission of an act of adultery by her, unless there is an express stipulation and limitation in the agreement that payment shall cease in the event that she becomes unchaste.

We deem the true rule to be that the conditions (other than adultery) which will justify the husband in separating himself from his wife, and refusing her support and maintenance, are those which our Divorce act has provided as a sufficient cause for the court to grant to the husband a divorce from bed and board, namely, extreme cruelty upon the part of the wife. This is necessarily so, for a husband cannot be justified in abandoning his wife and neglecting to support her for causes which will not justify the court in granting him a divorce. It follows, therefore, that when the husband, as in this case, separates himself from his wife, and she claims suitable support and maintenance under the statute, he must justify that separation by proof of extreme cruelty upon the part of his wife to the same extent as he would be compelled to prove if he were suing for a divorce from bed and board on the ground of extreme cruelty.

"Extreme cruelty," as used in our Divorce act, is such cruel conduct as endangers the safety of the person or the health of the aggrieved party, either actually inflicted or reasonably apprehended. *Smith* v. *Smith, 40 N. J. Eq. 566; Taylor* v. *Taylor, 73 N. J. Eq. 745.*

We now proceed to examine the evidence respecting the facts and circumstances culminating in the assault which the defendant contends amounted to extreme cruelty, justifying his desertion of his wife.

Mr. and Mrs. Cavileer were married in 1906, and lived happily together for many years. He was in the real estate and insurance business, and she assisted him therein and loaned him her own money from time to time. In 1919

friction arose between them because he had used her funds for investment or speculation in the stock market and refused, upon her request, to make to her a satisfactory statement of their financial affairs. She thereupon refused to join in conveyances of real estate, standing in his name, and this led to further discord. This continued into the summer of 1920, when the parties were living in a house owned by the husband, in Atlantic City. In this posture of affairs, and on August 18th, 1920, Mr. Cavileer came home, about midnight, more or less intoxicated. He had been drinking whiskey freely during the afternoon and evening. He brought with him a man friend, an entire stranger to his wife. He also brought wih him a quart of whiskey. The wife heard them in the hall. He and his friend retired to his bedroom, taking the whiskey with them, and there they partook of some of it. The wife was displeased, and indeed bitterly resented such conduct. When Mr. Cavileer and his friend came downstairs in the morning Mr. Cavileer brough with him the bottle of whiskey, partly concealed "between his vest and shirt." When Mrs. Cavileer saw this she tried strenuously to take the bottle from him, for the avowed purpose of preventing him from "taking the liquor out with him." He resisted and she pushed him over on the couch and held him, at the same time reaching for the bottle. In that situation Mr. Cavileer called upon his friend to help him, and his friend took hold of Mrs. Cavileer's wrists. She then called to her brother (a guest in the house, who was upstairs) to come and help her. Her brother rushed downstairs and struck Mr. Cavileer with his fist, the "friend" meanwhile having retreated to the porch.

Thus far there is no substantial dispute in the evidence. Mr. Cavileer says that while his wife had him down on the couch, trying to get the bottle, she scratched or hit his face. Even so, that single act of personal violence is not extreme cruelty, justifying abandonment of, and refusal to support, the wife, where, as here, the injury was slight and the act was committed under circumstances which do not furnish

any reasonable apprehension that the continuance of cohabitation would be attended with further personal injury. *Cook* v. *Cook, 11 N. J. Eq. 195.* In this connection it is to be observed that the act of the wife, of which the husband complains, may well be regarded as provoked by the inconsiderate conduct of the husband.

But the defendant further contends that the assault committed upon him by his wife's brother justified him in leaving her without support and maintenance.

We think not. No doubt abuse by relatives of the other spouse, countenanced by such other spouse, may be, under some circumstances, extreme cruelty constituting ground for divorce (or separation). But that is not this case. It is true, as we have pointed out, that when Mrs. Cavileer called for help, her brother rushed downstairs and struck her husband with his fist. But the evidence, while conflicting, we think shows that this blow was not countenanced by Mrs. Cavileer. It shows to our satisfaction that she immediately told her brother to stop, saying that she called him to "protect her from the man on the porch," not from her husband. It seems to show also that a few minutes later, when further trouble occurred at the garage, between her husband and his friend on the one hand, and her brother on the other hand, she stopped her brother from hitting her husband. Certainly she did not countenance any assault upon her husband.

It may be that the conduct of the brother was more severe than the circumstances warranted. But physical injury inflicted upon the husband by the brother of the wife, not countenanced by her, is not extreme cruelty, justifying the husband in separating himself from his wife, and refusing her support and maintenance, especially where, as here, the circumstances do not show any reasonable apprehension that the continuance of cohabitation with his wife would result in further injury. In this connection it is to be noted that prior to this trouble the brother was a welcome guest in the house, and he and the husband had been on friendly terms. Soon after the trouble the brother departed for his home in Pittsburg.

In such a proceeding as the present one it is always proper for the court to look at the attitude and conduct of the husband towards his wife since the commencement of the suit, for the purpose of giving character to the act of the husband in separating himself from his wife. *Cook* v. *Cook, 11 N. J. Eq. 195.* These and other circumstances in evidence indicate that the husband separated himself from her, not because he apprehended any personal injury from a continuance of cohabitation, but rather because he desired to free himself from her with or without legal cause. Prior to the trouble in August, 1920, he had notified tradesmen not to trust her. After the altercation he straightway established a residence in Philadelphia, apparently for the purpose of obtaining a divorce there. He never made any overtures for a reconciliation. When his wife approached him, as he admits, in a "very nice" way, for the purpose of reconciliation, he refused to speak with her. At the trial in the court below, while she expressed herself as willing to live with him, he expressed himself as unwilling to return unless he could be assured that she would treat him "right," and declined to accept her assurance on that point.

The decree below will be affirmed, with costs.

*For affirmance*—The Chief-Justice, Swayze, Trenchard, Parker, Bergen, Minturn, Kalisch, Black, Katzenbach, White, Williams, Gardner, Ackerson, Van Buskirk—14.

*For reversal*—None.