This proceeding is based on a petition filed by a husband charging adultery and a counter-claim alleging desertion.
The parties were married in 1919. They have three young children, and the early days that they spent with each other appear to have marked them as leading ordinary lives. The petitioner seduced the defendant before marriage.
On August 27th, 1923, the petitioner left the defendant and their children and has never returned. They differ widely as to the cause of his departure. He says she was leading a life that no husband should be expected to tolerate. That she not only neglected nearly all of her household duties, making it necessary for him to do much of it, including even laundering of some of the apparel for his children and constantly cooking his own meals, but, in addition to that, he says that his principal concern was over the frequent, if not habitual, absences of the defendant from the home until late at night. In the month of May she willfully and against his determined efforts departed from her home for the day with a man unknown to her husband, giving as her excuse that he was a salesman who was going to assist her in the selection and purchase of an overcoat for herself, notwithstanding the fact that the trip was made on a Sunday. The defendant does not seriously contradict this testimony, but she alleges that the reason her husband left her was his objection to any more children. She says that at the time of his departure, or the night before, she told him that she thought she was again pregnant and that he, thereupon, went away.
As between these two stories it seems to me that the probabilities are all in favor of the petitioner. My reasons for so believing it would be intolerable to publish in this opinion, and they have been completely indicated to the parties and their counsel. After the petitioner had left his home the defendant fell in with a man named Lehey, with whom she unquestionably committed adultery, although she denies it. My reasons for so deciding have also been sufficiently indicated to counsel and it would serve no good purpose to *Page 128 
reproduce them here. Thus, we have a situation in which it is shown that a man who was dissatisfied with his wife's conduct left her, although that conduct did not amount to a matrimonial wrong recognized by our divorce statute as a ground for divorce. There is no proof of any adultery before the separation, and no extreme cruelty or desertion by the wife.
The first point made against any decree in favor of the petitioner is, that he himself was guilty of desertion when he left his wife who had not been guilty at that time of any matrimonial offense recognized by our legislature. There can be no question that the great weight of authority is expressed in 1Bish. M., D. S. § 1742, where it is said:
"Where there is no consent, acquiescence or estoppel * * * no ills arising out of the marriage, or ill conduct of one party to the other, will so justify a breaking off of the cohabitation as to prevent its being desertion, except ill conduct of the sort and degree which the law has made foundation for divorce."
This learned and most careful author says that after more than forty years spent in uninterrupted reading of judicial decisions and interpreting them, the dicta of judges constitute such a mass of contradictions that an author by skillful selection could write any sort of a doctrine on any subject by repeating the words of the selected dicta "and all the fools would praise his book for its marvelous accuracy." He says that with all the volumes that have been written he cannot say there is one case in which it is authoritatively laid down that the above rule is not the true one. Sections 1747, 1748. In this court, in the case ofMoores v. Moores, 16 N.J. Eq. 275, Chancellor Green, in passing upon a defense of justification in a suit for desertion, said: "The conduct which will justify the wife in abandoning her husband must be such as would constitute a ground for divorce or alimony" (citing authorities). In the later case of Laing v.Laing, 21 N.J. Eq. 248, Chancellor Zabriskie laid down the opposite rule, saying that conduct less atrocious than was requisite to sustain a suit for divorce might excuse the offended spouse leaving the wrong-doer; but a careful reading of his opinion *Page 129 
will show that he actually decided the case as he did because the wife had condoned the offenses of which she complained, and they had never been repeated. Consequently, what he had to say on the subject under discussion amounted, in fact, to no more than an expression of his individual opinion, and not a decision of the case. Anything said in that opinion at variance with the views expressed in Moores v. Moores, supra, does not in any way shake the authority of the latter case. In Boyce v. Boyce,23 N.J. Eq. 337, Chancellor Zabriskie seemed to reconsider hisdictum in the Laing Case, because he there found, and decided, that the most provocative kind of conduct on the part of a wife, but not amounting to a matrimonial offense, invested the husband with no right to separate himself from her. InMeldowney v. Meldowney, 27 N.J. Eq. 328, Vice-Chancellor Van Fleet said, "that by personal violence, coarse language and constant neglect not amounting to extreme cruelty the petitioner had driven the defendant away from him quite as effectually as if he had bodily put her out of the house;" but he actually rendered his decision on the ground that there was no obstinacy in the separation. Furthermore, there is not a scintilla of proof shown in the opinion from which the extent and character of the misconduct of the petitioner in that case may be inferred. It is merely said that a daughter testified: "Mother left because she could not stand it any longer." Of course, that great judge never considered the daughter's opinion to be evidence. In Drayton v.Drayton, 54 N.J. Eq. 298, Chancellor McGill said:
"The generally accepted, and, I think, the true, doctrine is, that continued desertion, as contemplated by such a statute as ours, is justified only when it is shown by clear and satisfactory proof that the deserting party has been so offended against as to authorize, at his instance, a decree for divorce or judicial separation," citing many decisions in this and other jurisdictions, including some of those already cited herein. The present chancellor, in Suydam v. Suydam, 79 N.J. Eq. 144,
declared the law to be the same way at page 155, as he also did in Csanyi v. Csanyi, 93 N.J. Eq. 11, and *Page 130 Danielly v. Danielly, 93 N.J. Eq. 556, as well as inHauenstein v. Hauenstein, 95 N.J. Eq. 34.
In the case of Doty v. Doty, 92 N.J. Eq. 660, while the rule was not discussed, it would appear to be some support to the rule adopted in this court. There, a woman left her husband because of conduct upon his part which caused "her to be afflicted with a serious nervous trouble that threatened to permanently destroy her health and comfort if she continued to live with her husband." This, of course, fits the rule, defining extreme cruelty, in Black v. Black, 30 N.J. Eq. 215 (at p.221), quoted and adopted by the court of errors and appeals in the Doty Case. In fact, that court says, in the last-named case: "We think the petitioner established a clear case of constructive desertion and, therefore, was entitled to the relief prayed for in her petition." While it does not follow necessarily that less provocation would not have excused her departure from her husband, yet, there would seem to be some logic in the belief that the court of errors and appeals had in mind the rule under discussion. In Young v. Young, 94 N.J. Eq. 155, the petitioner said he left his wife because they had a quarrel over the fact that he was made ill "from eating meat which she cooked." The present chief-justice, writing the opinion for the court of errors and appeals, said that he had deserted his wife without justifiable cause, "for it never has been suggested, so far as I know, that dissatisfaction upon the part of the husband with his wife's cooking justifies him in permanently deserting her, even if on one occasion he is made ill from eating food she has prepared." From this language, it is apparent that there must be some standard by which the propriety of the departing spouse must be measured.
And in reason, what other standard could be adopted? As Bishop says, in his work quoted above, if this is not the rule, what rule shall be adopted? How much less misconduct will excuse the departure? Is there to be no rule? Is each case to be decided upon the personal opinion of the judge or one of the parties (section 1750)? It would seem to me that the legislature has fixed the rule when it formulated the causes, for any one or more of which one spouse may leave *Page 131 
the other and secure a decree of divorce. It is almost banal to say that the policy of the state is in the keeping of the legislative branch of the government, and that the commonwealth has a deep and vital interest in the preservation of the home, which is founded upon matrimony, whence it necessarily follows that promiscuous and unwise dissolution of marriages would be deeply injurious to the public. The law requires that parties who are married shall remain married until freed by judicial pronouncement, and until free, shall live together until one or the other of such parties shall have committed one or more of the defined offenses. It is not every grievance that one may have against the other, either temporary or permanent, that shall be allowed to destroy this solemn compact. Whether petty or weighty, there is no middle ground. The state has said that if either of the parties be guilty of extreme cruelty, adultery or desertion, the other may, upon meeting certain safeguards, secure a divorce, either absolute or limited. For less than this, no such decree shall be made, and it, therefore, follows that no separation shall occur. Having taken each other for better or worse, anything less than the state has declared to be a ground for divorce must be borne or overcome.
The entire matter has been set at rest by the court of last resort in at least two cases. Vice-Chancellor Leaming dealt with it in Taylor v. Taylor, 73 N.J. Eq. 745. He adopted the rule that expresses the great weight of authority and his opinion was adopted in that respect by the court of errors and appeals. Later, Chancellor Walker dealt with the subject in Rogers v.Rogers, 81 N.J. Eq. 479, and filed his opinion, which was written for the court of errors and appeals, expressing the unanimous agreement of the members of that court. At page 43 it is said:
"Under our statute desertion is justified when the deserting party has been so offended against as to authorize, at his or her instance, a decree for divorce or judicial separation, but the guilt of the offending party must appear by clear and satisfactory proof."
I regret that I cannot bring myself to a belief that the defendant was by all means averse to the absence of the *Page 132 
petitioner, as that would render his conduct lacking in obstinacy, and, therefore, because of the rule already dealt with at length, he would not be, before the court, himself guilty of conduct with relation to the marriage that renders his position untenable. I mention this because counsel joined in importuning the court to end the impossible position of these parties by severing the matrimonial bond. Personally, I believe that it would be much better for everybody concerned if they could be freed from one another; but the policy of the state has been established, and counsel must realize that it is vain to expect the court to be swayed by compassion in the face of the clearly-expressed legislative will. If such were to be done, the administration of the divorce law would result in the greatest chaos, each case depending upon the personal view and inclination of the particular member of the court by whom it should be heard.
Nor can the defendant expect to succeed in securing a divorce by reason of anything decided in Hedden v. Hedden, 21 N.J. Eq. 61.
There, it was said that if a man seduced his wife before their marriage and was thus put upon his guard as to her weakness, he is called upon to use "peculiar vigilance" to protect her against her weakness. While it is true that the petitioner seduced his wife before marriage, it is quite as true that he did everything he could to prevent her falling again into evil ways. He urged her in every way he could to remain at home evenings, and even went to the extent of a personal struggle to prevent her going to New York on the Sunday she says she went with a strange man to select an overcoat. My own recent opinion in Pike v. Pike, 100 N.J. Eq. 486, has been cited by the defendant. In that case, the husband, after seducing his wife, never made a home for her, gave her little or none of his society, permitted her to reside in a hotel in New York City while he remained domiciled with his parents in New Jersey, allowed her to live under her maiden name and to pursue the vocations of model and actress, which are perilous to the chastity of any woman. That is a very different situation from that of a man who gives his wife his name, prepares a home for her, and is ready and willing to live *Page 133 
upon ordinary domestic terms. But even if he had not lived up to the rule of Hedden v. Hedden, supra, it would be of no avail to her, because that is a defensive doctrine that, it seems to me, can never be used for the purpose of securing a divorce, because in proving it the woman, of necessity, stamps herself as an adulteress whose hands are so unclean that she cannot thereby secure affirmative relief. I know of no case where either a man or woman can plead his or her own adultery as a ground for securing a divorce against the other spouse.
Counsel for the petitioner apprehends that the case of Young
v. Young, supra, has been overruled by the decision in the later case of Smith v. Smith, 95 N.J. Eq. 657, and, hence, that the petitioner was not a deserter and was under no duty to seek out his wife and solicit her return. With the former of these deductions I am unable to agree. In the last-named case the defendant actually deserted her husband without any provocation or cause on his part, and went to live with another man. The rationale of the opinion is, that one of the exceptions to the rule requiring a husband to attempt to effect a reconciliation with his deserting wife, where her departure was caused to any extent by his misconduct, even though not amounting to a matrimonial offense, that if a woman is guilty of conduct that gives her husband just cause to suspect her chastity he is under no obligation to attempt to effectuate her return. This is very different from the problem presented by the case at bar, because here the husband himself was the deserter before any immoral conduct on the part of the defendant cognizable in a divorce suit. In short, Smith v. Smith sets up an exception to the duty to effect a reconciliation, while the question, to decide which that case is cited, is whether or not misconduct less than that which will support a decree of divorce will justify a withdrawal from matrimonial cohabitation.
 Both the petition and the counter-claim should be dismissed. *Page 134