This matter is before the court on complainant's bill for maintenance, based on the twenty-sixth section of the Divorce act, and defendant's counter-claim for divorce, based on the ground of desertion. The parties were married April 25th, 1922, and lived together for about three weeks when the complainant abandoned the defendant. She says she was obliged to leave him "on account of his cruelty to her." The cruelty is not specified. The only cruelty recognized by our law which may warrant one spouse in abandoning another is such as is denominated "extreme cruelty," which our court of errors and appeals has defined to be such cruel conduct as endangers the safety of the person or the health of the aggrieved party, either actually inflicted or reasonably apprehended. Cavileer v.Cavileer, 94 N.J. Eq. 160. The complainant's bill recites that on October 11th, 1922, she filed a petition in this court *Page 217 
against the defendant for a divorce from bed and board and "therein alleged certain acts of cruelty." She thereby assumed the burden of proving her allegations, for, as stated in Taylor
v. Taylor, 73 N.J. Eq. 745 (at p. 748), "she must show a case of extreme cruelty such as would entitle her to a decree of separation. The courts can know no middle ground." The defendant filed answer to the aforesaid petition, and a hearing on such petition and answer resulted in a decree dismissing the petition because of petitioner's failure to substantiate the allegations thereof. The complainant, in her aforesaid petition for divorce, alleged as acts of cruelty said to have been perpetrated upon her by the defendant, offenses of a nature which she might reasonably expect would effect his ostracism from friends, business associates, and all decent society. In testifying in her aforesaid divorce suit she repeated and amplified the allegations of her petition. She alleged, among other things, that almost from the time of her marriage to the defendant he began to show signs of moral degeneracy, asked her to cohabit with him in unnatural and improper ways, to do things to him which showed he had a perverted mind, and committed such acts of cruelty against her genital organs and parts that she was obliged to consult a physician for treatment; that by reason of his alleged "acts of cruelty and inhuman treatment" she became a physical wreck and her nerves were in such a condition that even if she were willing to forgive the alleged acts of cruelty it would be dangerous to her health and life to go back and cohabit with him. She charged the defendant, in her testimony, with having been a party to an abortion committed upon a young woman whom she named, and also with having committed adultery. Her charges, though oft repeated, were not corroborated or substantiated. The record of complainant's aforesaid divorce suit (Docket 52 p. 480) offered and admitted in evidence in the case sub judice shows that it was heard before Vice-Chancellor Lewis, who on March 8th 1926, advised a decree dismissing the petition. The decree, which was entered March 10th, 1926, reads in part as follows: "The court having read and considered said petition and the answer, and heard the testimony and *Page 218 
proofs offered by petitioner, and being satisfied that the petitioner has failed to substantiate the allegations of her petition, and the court being satisfied that the bill of complaint should therefore be dismissed as against the defendant, it is on this 8th day of March, 1926, ordered that the petition filed herein be and the same is hereby dismissed." The court must assume that the divorce suit was adjudicated upon its merit, and that the decree entered therein is res judicata of the matters complained of therein, and, as the complainant herein relies upon the same matters alleged in the former suit, the aforesaid decree is dispositive of the case sub judice. Upon my making a statement to such effect at the hearing of this cause, counsel for the complainant urged that the decree in the former suit should not be so regarded. It is clear to me that said decree must be regarded as having settled the rights of the parties as to the issues involved and decided in the proceeding upon which it was based, and dispositive of the case sub judice. West NewYork Improvement Co. v. West New York, 88 N.J. Eq. 571. The complainant cannot nullify the res judicata rule by changing the character of the relief sought from that of a decree of divorce a mensa et thoro, to a decree for maintenance, nor be held to question the decree in the former suit by collateral attack, such as is manifested by her present suit. Hochman v.Mortgage Finance Corp. (Pa.), 137 Atl. Rep. 252; Nitti v.Public Service Railway Co., 104 N.J. Law 67; Spence v. Spence,74 N.J. Eq. 786; In re Walsh's Estate, 80 N.J. Eq. 565, 569;McGarvey v. Young, 100 N.J. Eq. 174; affirmed, 101 N.J. Eq. 302; 1 Barber's Ch. Prac. 322; 1 Kocher Trier, Ch. Prac. Prec. § 466. In Barber's Ch. Prac., supra, it is said that if a bill be dismissed after hearing, unless the decree of dismissal be without prejudice to the complainant's right to bring a new suit, the decree may be pleaded in bar to a new suit. In Kocher Trier, supra, it is said: "The dismissal of a bill in equity for failure of proofs has never been treated as similar in effect to a voluntary nonsuit at law, but, on the contrary, a decree dismissing a bill of complaint after a full hearing upon the merits has always been treated as an effectual bar to the *Page 219 
complainant, and to all who claim under him, from bringing a new suit so long as such decree is unreversed." See, also,Henninger v. Heald, 52 N.J. Eq. 431; affirmed, 53 N.J. Eq. 694.
In Spence v. Spence, supra, it was held that in a suit for divorce a mensa et thoro on the ground of extreme cruelty, if the facts constituting the alleged cruelty are disproved, a decree dismissing the petition of complainant will operate resjudicata and be a bar to pleading or proving the same facts in any subsequent suit. In Hochman v. Mortgage Finance Corp.,supra, the court (at pp. 253, 254) says: "A party cannot escape the bar of the judgment against him by bringing a new suit on the same cause of action, but in a different form of action or proceeding, unless the relief sought in the second action was not, or could not have been, germane to the first proceeding. * * * The fact that a different measure of relief is asked by the plaintiffs in the latter suit does not deprive defendants of the protection of the prior proceedings and the decree in their favor. Green v. Bogue, 158 U.S. 478; 15 Sup. Ct. 975;39 L.Ed. 1061."
Inasmuch as this court adjudicated in complainant's former suit that she had failed to substantiate the allegations of her petition, it was her duty to return to live with the defendant, for, as stated in Taylor v. Taylor, supra, "a wife must live with her husband, make his home hers and give him her society and services, unless she can show reasons valid in law, relieving her from her duty to him." See, also, Pinkinson v. Pinkinson,92 N.J. Eq. 669. Instead of complying with her aforesaid duty, within one month after the entry of the decree in her former suit she commenced her present suit, and, on March 9th, 1927, appealed from such decree. Her appeal was dismissed May 24th, 1927, on motion of her solicitors. Disregarding the decree of this court in her former suit, she persisted in reasserting her offensive allegations against the defendant. In paragraph 6 of her bill herein she says she testified in her previous suit that she was ready and willing and desirous of going back to live with her husband "provided he would cease and refrain certain acts of marital and congenital cruelty towards her." In her reply to paragraph 8 of defendant's counter-claim she denies the allegations thereof *Page 220 
— "except in so far as she refuses to cohabit with her husband until he would treat her as a respectable married woman should be treated and would live with her in a natural way; that your petitioner never refused to live with or cohabit with her husband if he would treat her with respect and live with her in a natural way and not perform unnatural acts with her, all of which are more fully and specifically set forth in the bill of complaint filed by her against her husband, for a divorce from bed and board." Her actions and conduct from the time she abandoned the defendant, as disclosed by the pleadings and proofs, clearly manifest that she was determined that she would not resume cohabitation with him. This court may and should consider the conduct of the complainant towards her husband since her abandonment of him for the purpose of gauging the bona fides of her professed readiness and willingness to resume cohabitation with him, particularly in view of the apparent malignity with which she prosecuted her former suit and her present suit.Cavileer v. Cavileer, 94 N.J. Eq. 160, 166; Cook v. Cook,11 N.J. Eq. 195, 201. The defendant's answer to paragraph 3 of the complainant's petition in her divorce suit, in addition to denying the allegations thereof, says: "He is ready and willing to take back the petitioner and cohabit with her as man and wife." She did not avail herself of such offer. Her testimony evidences that her charges were absolutely of her own making, without any suggestion or influence upon the part of anyone else. The proofs show it was only after the defendant was convinced that his wife would not be reconciled with him that he determined to refute her nefarious charges and demonstrate to the court that they were not only false in fact, but known by her so to be. Notwithstanding the dismissal of complainant's petition in her divorce suit, which dismissal must necessarily be regarded as a refutation of the charges of alleged cruelty which she made against her husband, instead of expressing contrition to him for her aspersion of his character, and attempting to effect a reconciliation and resumption of marital cohabitation with him, she instituted her present suit, reiterated in her bill of complaint the same charges which she made against her husband in her former suit, and grievously *Page 221 
slandered him by reiterating some of such charges to divers persons, among whom, one, Waverly A. Gale, asserting them to be true. Though her bill of complaint was filed April 9th, 1926, she says she in good faith sought a reconciliation with her husband on June 17th, 1926. Her statement is incredible. The testimony of Mr. Gale evidences that the complainant, in October, 1926, asked him whether he knew her husband, "Mr. Thomas O'Brien, of the Hotel Deville," and upon his replying in the negative, she said to him: "He is my husband. * * * I am trying to get a divorce upon the grounds of adultery if I can get anything on him * * *. Did you ever hear that he was a degenerate?" and upon his replying in the negative, she said to him: "Well, he is." When recalled as a witness the complainant did not make denial thereof. In Jacobs v. Jacobs, 100 N.J. Eq. 482, it is said that all of the authorities are to the effect that there is a presumption that a spouse who commences a suit for divorce does not want to resume cohabitation, and that it is fair to presume, ordinarily, that after a suit is instituted, but before decree or judgment, the petitioning spouse is well content to have the other away, and such a presumption can only be overcome by competent and sufficient proof to the contrary. The presumption aforesaid has not been overcome by the complainant. On the contrary, the proofs warrant the conclusion that the complainant was not, as she says, conditionally ready, willing and desirous of living with her husband. The circumstances attending her visit to her husband's Hotel Deville, in Atlantic City, when she says she "in perfect good faith and sincerity" endeavored to persuade him to cohabit and live with her "as a good husband should," coupled with her other conduct as manifested by the proofs in this case, do not evince sincerity upon her part. She testified that she sought a reconciliation with her husband "if it could be accomplished upon proper terms," and when asked by the court what she meant thereby, she said: "Well, what I meant by that was if my husband would lead the right kind of life;" and when asked whether she had ever said to her husband that she was desirous of being reconciled to him and live with him without *Page 222 
regard to what she had said against him, or without regard to what she may have done before, she said, "No, I did not say that to him;" and when asked whether she ever expressed any sorrow to him for the insinuations or accusations she had made against him, she replied, "No;" and when asked, "Did you still believe they were true?" she replied, "Yes." She testified also that on the above-mentioned occasion of her visit to her husband's hotel she said to him, "Tom, I have come down here to break the ice, to see if we cannot effect a reconciliation." Her testimony in this respect, considering all of the other facts and circumstances in the case, does not ring true. Her statements that she endeavored to persuade her husband to cohabit and live with her "as a good husband should," and that the reconciliation which she sought with him was to be effected conditional "if it could be accomplished upon proper terms," and "if my husband would lead the right kind of life," and "if he turned over a new leaf," her statement to the court that she believed the charges which she made against her husband to be true, her inquiry of Mr. Gale as to whether he knew her husband was a degenerate, and upon his reply in the negative her statement that he was such, cannot reasonably be regarded as other than a further calumny upon him, and a plain innuendo that his cohabitation with her had not been honorably conjugal. The proofs disclose also that when the complainant went to the defendant's hotel for the avowed purpose, as she says. of endeavoring to persuade her husband to become reconciled and permit her to live with him again, she was accompanied by a Miss Kennedy as a witness to the colloquy between herself and her husband. The fact that she was accompanied by said party as a witness to her persuasion is quite indicative that she was merely pretending to make sincere overtures to her husband to resume marital relations with her and that her real purpose was to establish evidence to be used in her then pending maintenance suit. Furthermore, while residing at the defendant's hotel for several months after June 17th, 1926, she sought information from several of defendant's hotel employes as to whether they knew he was running around with other women, and she had several interviews with one Hoey, who conducted a private *Page 223 
detective agency, through which she sought to obtain evidence of defendant being guilty of adultery. In estimating the sincerity of her alleged endeavor to effect a reconciliation with her husband the court properly considers the intent, design and purpose of her activity. In Popovics v. Popovics, 98 N.J. Eq. 350
(a maintenance suit), the husband claimed he had endeavored to procure his wife's return, and that she had obstinately and unreasonably refused to listen to his appeal; the court declared: "A plea of that character must be supported by at least proof of his bona fide intention, and some proof of his heart-felt contrition for his past conduct. Lister v. Lister, 65 N.J. Eq. 109; affirmed, 66 N.J. Eq. 434; McVickar v. McVickar, 46 N.J. Eq. 490.
In estimating the sincerity of such an appeal, the court necessarily proceeds upon the theory quo animo, and in reaching any satisfactory conclusion as to his motives, the old adage that conduct speaks louder than words must needs play an important part." Considering that the complainant's abandonment of the defendant was based upon alleged acts of cruelty which by reason of the dismissal of her petition for divorce he must be conceded to have been exonerated of, it appears to me it was incumbent upon her to have manifested contrition or repentance for her unjustified abandonment of her husband, her base and malicious aspersion of his character, and the outrageous charges of moral depravity which she repeatedly made against him. The corollary of the above quotation from Popovics v. Popovics
should, in my judgment, be applicable in the case sub judice, and paraphrasing language contained in said case (at p. 354), I deem it appropriate to herein declare that to expect the defendant, upon a perfunctory and artificial plea, enveloped in all the paraphernalia of a studied legal performance, to seek the return to his home or permit return thereto of the woman (his wife) who abandoned him, calumniated, traduced and outrageously villified him, and who by her conduct and utterances caused him to suffer a nervous illness unfitting him for a time from pursuing his ordinary business activities, subjected him to probable ostracism from decent society, and possible indictment and criminal prosecution, *Page 224 
without any expression upon her part of apology, recantation or repentance for her action, would be to impose upon human nature an artificial and extravagant attribute of self-abnegation which neither the law of nature nor the law of the land contemplates or exacts. In the case sub judice I am of the opinion that the burden of proving a bona fide effort or willingness to effect a reconciliation was upon the complainant, and doubt as to her efforts or willingness should be resolved against her. To entitle the complainant to the relief sought by her in her bill of complaint the condition of abandonment, as stated in Margarum
v. Margarum, 57 N.J. Eq. 249, "must necessarily be the husband's act; the wife cannot abandon the husband and then invoke the aid of the statute to secure support from him." The defendant, in my judgment, was absolved by the declarations and conduct of the complainant from making any overtures to re-establish cohabitation with her, other than such as he made by his answer to her petition for divorce, hereinabove mentioned. The proofs clearly evidence that no matter what overtures he may have made they would be ineffectual, and under such circumstances he is relieved in law from what is ordinarily considered to be the duty of the husband as a preliminary requisite to granting him a decree of divorce on the ground of desertion. Wood v.Wood, 63 N.J. Eq. 688, 691; Lammertz v. Lammertz, 59 N.J. Eq. 649; Fry v. Fry, 100 Atl. Rep. 839; Hall v. Hall, 60 N.J. Eq. 469,470; Rogers v. Rogers, 81 N.J. Eq. 479. In Arnaboldi v.Arnaboldi, 101 N.J. Eq. 126, it was held that no ills arising out of marriage or ill conduct of one party to the other will so justify breaking off of cohabitation as to prevent its being desertion, except such ill conduct be of such nature as in law to constitute foundation for divorce. This court should not through the medium of allowing alimony to the complainant in the casesub judice, encourage her abandonment of the defendant. InSuydam v. Suydam, 79 N.J. Eq. 144, it is said that a wife who leaves her husband does so at her peril, and assumes the burden of making the desertion constructively his by establishing his guilt by clear and satisfactory proof. Aside from the fact that the complainant *Page 225 
abandoned the defendant without justification, her letter of March 8th, 1923, addressed to her former solicitor, which was offered and admitted in evidence in her former suit without objection, and which reads: "As I have repeatedly said, there is absolutely no possibility of a reconciliation, it being against my religious principles in addition to it being dangerous to my life. I trust, Mr. Goldenhorn, you will not request me again to reconsider that, as my mind has been made up from the beginning," clearly manifests her state of mind, and her evident determination to remain away from her husband notwithstanding his offer to take her back to live with him, and her oft-repeated allegations of degeneracy, abuse of her genital parts and other grievous accusations, manifested her non-desire to live with him in the conjugal relation which the marriage state impliedly exacts of and imposes upon her, and exonerates him from the exacting importunities and intercessions ordinarily required of a husband as a pre-requisite in a suit for divorce based upon the ground of desertion. It is clear to me that the prosecution of the complainant's several suits, and the time elapsed during the pendency thereof, cannot militate against the defendant. InWeigel v. Weigel, 63 N.J. Eq. 677 (at p. 681); affirmed,65 N.J. Eq. 398, it is said that when "the wife's previous suit, the pendency of which is set up to excuse her apparent desertion, was based on allegations which were known by her to be false when they were submitted to the court, and when her testimony in that suit, in support of those allegations, is proven to have been untrue by many disinterested witnesses, so that it is made quite clear that her previous suit was a false pretense, and not a genuine presentation of a believed grievance, the excusatory effect of the pendency of the previous suit is wholly lost. Such an exhibition shows that the proceeding was a fraud upon the court, on the law, and on the defendant attacked by it. Its pendency is no answer to proof that the wife willfully, continuedly and obstinately abandoned her husband. Indeed, it may be additional evidence of the obstinacy of her determination to desert her husband, and escape from her marital duty." InHartpence v. Hartpence, 121 Atl. Rep. *Page 226 513, it was held that continuity of willfulness and obstinancy of desertion was not broken by intervening suit for divorce, where it was obviously not brought in good faith. See, also, VonBernuth v. Von Bernuth, 76 N.J. Eq. 487. If it be regarded that in the case sub judice it was requisite for the defendant to sustain the burden to show affirmatively that his wife abandoned him of her own choice and against his will, and that she continued to stay away when it was her duty to return, he has fully sustained such burden. In Wood v. Wood, 63 N.J. Eq. 688,691, this court declared there are cases which hold that an indication, by the wife, of an unchangeable purpose to separate from her husband will excuse him from soliciting her return. InHall v. Hall, 60 N.J. Eq. 469, it was held that the law does not impose upon the husband the duty in every case arbitrarily and without regard to the facts and circumstances by which it is surrounded to endeavor to effect his wife's return to him; that he is bound to make advances and concessions only where there is reasonable ground to suppose that such action upon his part will terminate the wife's desertion; that where it is manifest from the circumstances under which the desertion took place, or from her temper and disposition, or from any other fact in the case, that honest effort on the husband's part to terminate the separation will be unavailing, or if successful in bringing the desertion to an end would be so only temporarily, the duty of making such advances and concessions does not exist. In Fry v.Fry, supra, Vice-Chancellor Lane held that in order to establish desertion justifying a divorce, a husband need seek his wife's return only where there are reasonable chances of his success. It is clearly apparent to me that all overtures and efforts which the defendant might have made to induce the complainant to return to live with him would have been futile. See Rogers v. Rogers, 81 N.J. Eq. 479, 485. The complainant cannot reasonably expect this court to believe that she, reiterating and reasserting as truths the nefarious charges against her husband, which, by the dismissal of her former suit must be regarded as groundless, would mortify herself by resuming cohabitation with him whom she had virtually *Page 227 
proclaimed to the world as unfit to enjoy the society of decent people or be tolerated in their midst. I have in mind, too, in considering the complainant's alleged bona fide overtures to effect a reconciliation with her husband, that such were in the year 1926, when he had a right to reject all offers of reconciliation coming from her, however sincere they may have been, inasmuch as he had then a vested right to a divorce, on the ground of desertion, because of her willful, continued and obstinate desertion of him for a period of more than four years prior thereto. See Gordon v. Gordon, 88 N.J. Eq. 436, 439;Hall v. Hall, supra.
I will advise a decree dismissing the complainant's bill, and granting to the defendant a decree of divorce on the ground of desertion, as prayed in his counter-claim.